**CUSHING v. WHALEY et al.**

No. 6578—Opinion Filed Jan. 9, 1917.

Rehearing Denied May 29, 1917.

(165 Pac. 135.)

(Syllabus by the Court.)

1. **Indians—Deed of Inherited Lands—Approval of Secretary of Interior—Validity.**

Section 22 of the act of Congress of April 26, 1906 (34 Stat. 137, c. 1876), giving to the adult heirs of any deceased Indian of either of the Five Civilized Tribes, whose selection has been made or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, authority to sell and convey the lands inherited from such decedent, but which also provides that "all conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe," renders void a deed to inherited lands, whether surplus or homestead, allotted during the lifetime of a deceased full-blood Chickasaw, who died prior to the date of the passage of the act, where the heirs, adult full-blood Chickasaws, attempted to convey by deeds dated, respectively, May 8 and June 7, 1907, without obtaining the approval of the Secretary of the Interior to such conveyances.

2. **Indians — Guardianship — Authority of Congress—Approval of Conveyances.**

Congress, in the exercise of its constitutional authority, and in pursuance of a long-established governmental policy, has the right to determine for itself when the guardianship, which the government has maintained over full-blood Indians, shall cease. While such guardianship continues, it may by legislation constitutionally impose restrictions on full-blood Indian heirs, requiring that conveyances by them of inherited allotted lands be approved by the Secretary of the Interior; and this notwithstanding the fact that restrictions imposed by prior legislation have expired by limitation, or by the death of the allottee.

Hardy, J., dissenting.

Error from District Court, Pontotoc County; Tom D. McKeown, Judge.

Action by Francis J. Cushing against John H. Whaley, Mary E. Whaley, the American Trust Company, and J. A. Wooley, in which Jinsey Carney, Margrette Carney, and Billy Killcrease, Simon Killcrease, and Raymond Killcrease, by their legal guardian, John H. Cox, filed their plea of intervention, as did Johnson Carney, by a separate plea. From the judgment decreeing the title to the lands in controversy to be in the interveners, Jinsey Carney, Margrette Carney, and Billy Killcrease, Simon Killcrease, and Raymond Killcrease, the plaintiff brings error. Pending the appeal, the said Francis J. Cushing died, and said proceedings in error were on July 27, 1915, revived in the name of Ada T. Cushing, administratrix of the estate of Francis J. Cushing, deceased. Affirmed.

Tibbetts & Green, for plaintiff in error.

B. C. King, for defendants in error.

SHARP, J. This case involves the title to the northwest quarter of section 27, township 4 north, range 7 east of the Indian Meridian, situate in Pontotoc county and allotted during life to Sampson Carney, a full-blood Chickasaw Indian, who died March 21, 1906. As we understand the record, Jinsey Carney was the surviving wife of Sampson Carney; Margrette Carney the surviving wife of Tom Carney, a son of Sampson; and Harriet Killcrease, née Carney, the daughter of said Sampson. Prior to the filing of the plea of intervention, Harriet Killcrease, née Carney, the daughter, died, leaving, as her sole and only heirs at law, her children, Billy, Simon, and Raymond Killcrease. After the death of Sampson, by deeds dated, respectively, May 8, 1907, and June 7, 1907, his heirs attempted to convey the title inherited by them to one W. C. Kandt. Thereafter conveyances were made by Kandt to the American Trust Company and by the trust company to John H. Whaley, who, join-

ed by his wife, executed the mortgage sought to be foreclosed by the assignee thereof, July 5, 1907.

Like himself, the heirs at law of Sampson Carney were each full-blood Chickasaw Indians. Their deeds to Kandt to the quarter section of land involved were not approved as provided by the act of Congress of April 26, 1906 (34 Stat. at L. 137, c. 1876). The sole question for our consideration is the right of the heirs, who are full-blood Indians, to sell and convey the lands inherited from their deceased ancestor, without having the conveyance approved by the Secretary of the Interior, as provided in section 22 of the act of April 26, 1906. The exact question was involved, and after full consideration decided, in the case of Brader v. James, 49 Okla. 734, 154 Pac. 560, where it was held that section 22 of the act of Congress of April 26, 1906, giving to the adult heirs of any deceased Indian of either of the Five Civilized Tribes, whose selection has been made, or to whom a deed or patent has been issued for his or her share of the lands of the tribe to which he or she belongs or belonged, authority to sell and convey the lands inherited from such decedent, but which further provides that "All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe," rendered void a deed to inherited lands, whether surplus or homestead, allotted during the lifetime of a deceased full-blood Choctaw, who died prior to the date of the passage of the act, where the heir, an adult full-blood Choctaw, attempted to convey by deed, on August 17, 1907, without obtaining the approval of the Secretary of the Interior to such conveyance. There, as here, the death of the full-blood allottee occurred prior to the passage of the act of Congress of April 26, 1906; but the conveyance was not made until after the date on which said act became a law. As recognized in the brief of counsel for plaintiff in error, the case is ruled by the decision in Brader v. James, if that opinion is adhered to.

In support of the views by us expressed in the opinion in Brader v. James may be added the following opinions of the Supreme Court of the United States, decided or published since the above opinion was handed down: Williams et al. v. Johnson, 239 U. S. 414, 36 Sup. Ct. 150, 60 L. Ed. 358; Levindale Lead & Zinc Mining Co. et al. v. Coleman, 241 U. S. 432, 36 Sup. Ct. 644, 60 L. Ed. 1080; United States v. Nice, 241 U. S. 591, 36 Sup. Ct. 696, 60 L. Ed. 1192. In the opinion in Brader v. James, attention was called to the fact that the Supreme Court, in Choate et al. v. Trapp, 224 U. S. 665, 32 Sup. Ct. 565, 56 L. Ed. 941, expressly recognized a distinction between the right to exemption from taxation, based on a sufficient consideration, and the power of Congress to impose a limitation on alienation. This view of the law finds support in Williams et al. v. Johnson, supra, where, as here, the opinion in Choate v. Trapp was urged as an authority, authorizing a contrary conclusion. In that case it was said:

"It has often been decided that the Indians are wards of the nation, and that Congress has plenary control over tribal relations and property, and that this power continues after the Indians are made citizens, and may be exercised as to restrictions upon alienation. Marchie Tiger v. Western Invest. Co., supra. Against this ruling, Choate v. Trapp does not militate. In the latter case it was decided that taxation could not be imposed upon allotted land a patent to which was issued under an act of Congress containing a provision 'that the land should be nontaxable' for a limited time; and, excluding the application of the Marchie Tiger Case, it was said that exemption from taxation 'and nonalienability were two separate and distinct objects.' And further, 'one conveyed a right and the other imposed a limitation.' The power to do the latter was declared, and it was said: 'The right to remove the restriction (limitation upon alienation) was in pursuance of the power under which Congress could legislate as to the status of the ward, and lengthen or shorten the period of disability. But the provision that the land should be nontaxable was a property right, which Congress undoubtedly had the power to grant.'"

The opinion fully sustains our former construction of the decision in Choate v. Trapp, and, besides, removes any doubt as to the limitations that should be given that decision.

Congress, in the exercise of its constitutional authority, and while the guardianship relation over full-blood Indians continues, may impose restrictions on full-blood heirs, requiring that conveyances by them of inherited allotted lands be approved by the Secretary of the Interior; and this notwithstanding the restrictions imposed by prior legislation have expired by limitation, or by the death of the allottee. Section 22 of the act of April 26, 1906, as said in Levindale Lead & Zinc Mining Co. et al. v. Coleman, supra, "evinced the continuance, to this extent at least, of the guardianship which the United States had exercised from the beginning." And as said in United States v. Nice, supra:

"Of course, when the Indians are prepared to exercise the privileges and bear the bur-

dens of one sui juris, the tribal relation may be dissolved and the national guardianship brought to an end; but it rests with Congress to determine when and how this shall be done, and whether the emancipation shall at first be complete or only partial. Citizenship is not incompatible with tribal existence or continued guardianship, and so may be conferred without completely emancipating the Indians, or placing them beyond the reach of congressional regulations adopted for their protection."

The latter opinion is noteworthy, in that it expressly overrules the former opinion of that court In re Heff, 197, U. S. 488, 25 Sup. Ct. 506, 49 L. Ed. 848, long considered a leading authority upon the power of Congress to deal with the individual Indian.

We think section 22 of the act of April 26. 1906, being for the protection and benefit of full-blood Indian heirs, in making conveyances of inherited allotted lands, should be taken literally, and without any implied exception in favor of those whose ancestors died subsequent to allotment, but prior to the passage of said act. Strained construction should not be given the language used, but, instead, the statute should be construed in the light of the policy it was obviously intended to execute; a policy relating to the welfare of Indians, wards of the general government.

The deeds not having been approved, Kandt took no title, and hence Whaley through mesne conveyances, acquired no interest in the land, the subject of a mortgage.

The judgment of the trial court is affirmed.

All the Justices concur, except HARDY, J., dissenting.